IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARL A. KNIGHT**, | : | CIVIL ACTION NO. 1:09-CV-0060 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **WARDEN DAVID J. EBBERT**, et al., | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Carl A. Knight ("Knight"), a federal inmate incarcerated at the Federal Correctional Institution at Allenwood ("FCI-Allenwood"), White Deer, Pennsylvania, commenced this Bivens[1] action on January 13, 2009, alleging that defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.[2] (Doc. 1.) Named as defendants are the following: Warden David J. Ebbert ("Ebbert"); Jay Miller ("Miller"), Medical Officer; Debra Spotts ("Spotts"), Assistant Health Services Administrator; James Brady ("Brady"), former Clinical Director; and Ronald Laino ("Laino"), Health Services

---

[1] Bivens allows a citizen suffering a compensable constitutional injury to invoke general federal question jurisdiction to obtain an award of monetary damages. Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971)

[2] In his Rule 56 papers, Knight alleges for the first time that he was denied medical care in retaliation for pursuing legal action. This claim will not be entertained because it is not set forth in the complaint, and plaintiff has not sought leave to amend his complaint to include such a claim. Rather, he has attempted to interject it in a paragraph in his counter statement of material facts. (Doc. 23, at 6, ¶ 28.)

Administrator. Presently ripe for disposition is defendants' motion to dismiss and for summary judgment. (Doc. 16.) For the reasons that follow, the motion to dismiss will be granted in part and denied in part and the motion for summary judgment will be granted.

I. **Motion to Dismiss**

   A. **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The

2

plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that Rule 8 requires more than "an unadorned, the-defendant unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### B. Allegations of the Complaint[3]

On or about March 2007, Knight began experiencing "painful abnormal growth(s) on the back of his head" which were determined to be "sebaceous cysts. . . ." " (Doc. 2, at 4, ¶ 1.) On October 23, 2007, he was examined by an outside

---

[3]The complaint in this action consists of the form complaint (Doc. 1) and the supporting memorandum of law (Doc. 2).

3

surgeon. Defendant Spotts documented in the medical notes that the surgeon recommended that antibiotics be administered, that Knight be seen by a dermatologist, and that the cysts be surgically removed. (Id. at ¶ 3.) On April 21, 2008, because he still had not received the surgery, he informally requested that he see a dermatologist and be scheduled for surgery. He indicates that prior to filing the request, he went to health services twice. He also personally spoke with the warden, defendant Ebbert, concerning his condition. (Doc. 2, at 12.) He was notified on April 22, 2008, that he would be scheduled for removal of the bumps "in [the] near future." (Id. at 13.) On April 24, 2008, he filed an administrative claim regarding the delay of medical treatment. (Id. at 14.) Over a year had passed since he was first diagnosed, the growth had grown to three growths, and his pain was getting worse. He was again advised on May 23, 2008, that he was "scheduled to have surgery in the near future." (Id. at 15.) He appealed to the regional level on June 2, 2008. (Id. at 16.) On July 3, 2008, he was informed that although the surgery, which was scheduled for June 27, 2008, did not occur, the surgery would be rescheduled for a later date. (Doc. 2, at 17.) In response to his Central Office Administrative Remedy Appeal, he was advised as follows:

> Relevant portions of your medical record have been reviewed which reveal you have been evaluated by clinical staff and by a consultant surgeon and diagnosed with sebaceous cysts. Sebaceous cyst generally do not require treatment, however, yours have become infected in the past. When your cysts showed signs of infection, staff provided appropriate medical care with antibotics. On August 19, 2008, the Clinical Director informed you that surgery would be primarily for cosmetic reasons and instructed you to follow-up at sick call with any infectious concerns. The Clinical Director [defendant Brady] has

currently deferred surgical intervention. The record reflects you are receiving medical care and treatment in accordance with Bureau of Prisons' policy.

(Id. at 19.)

Knight expressed concerns over the lack of treatment to defendants Miller, Laino, and Ebbert. He states that he "continues to suffer in extreme pain and sever[e] swelling of the deformed growths to which are now multiple boils with puss within them to the point of where staff allow him to wear a head covering the majority of the day but offer no treatment to which has been recommended yet denied by the defendants named herein." (Doc. 2, at 6, ¶ 10.)

**C. Discussion**

1. Sovereign Immunity

Defendants seek to dismiss the Bivens claims seeking monetary damages against defendants in their official capacities. (Doc. 17, at 7-9.) Sovereign immunity protects the Government from suit except when it has explicitly waived that immunity. United States v. Bein, 214 F.3d 408, 413 (3d Cir. 2000). The waiver must be "express[ed] unequivocally in statutory text and will not be implied. Id. (citing Lane v. Pena, 518 U.S. 187, 192, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996)). "[S]overeign immunity advances a jurisdictional bar which a party may raise at any time, even on appeal, and which [a] court may raise sua sponte." Id. at 412.

"An action against government officials in their official capacities constitutes an action against the United States; and Bivens claims against the United States are barred by sovereign immunity. . . ." Lewal v. Ali, 289 F. App'x 515, 516 (3d Cir. 2008) (non precedential) (citing FDIC v. Meyer, 510 U.S. 471, 483, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); Jaffee v. United States, 592 F.2d 712, 717 (3d Cir.1979)). Inasmuch as the plaintiff seeks monetary damages against all defendants in their official capacities, the claims must be dismissed on grounds of sovereign immunity. This court is barred from hearing claims against government officials in their official capacity unless Congress has expressly waived immunity, which it has not. See Chinchello v. Fenton, 805 F.2d 126, 130 n. 4 (3d Cir. 1986); see also Consejo de Desarrollo Economico de Mexicali v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007) ( Bivens claims only can be maintained against a defendant in his or her individual capacity).

2.  Personal Involvement

Defendants next seek to dismiss defendants for lack of personal involvement in conduct amounting to a constitutional violation. (Doc. 17, at 8.) Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

6

> privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); see Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207-08.

The allegations that defendants Spotts, Miller, Brady and Laino were personally involved in depriving him of surgery to remove the sebaceous cysts are sufficient to state a claim of deliberate indifference. The Eighth Amendment claim against these defendants will proceed to the summary judgment stage.

As concerns defendant Ebbert, Knight seeks to hold him liable based upon his position as the "Warden and overseer, and liable for deficient performances." (Doc. 2, at 3, ¶ 2.) Liability cannot be predicated solely on the operation of

*respondeat superior*.  Rizzo v. Goode, 423 U.S. 362 (1976);  Rode, 845 F.2d at 1207.  To maintain a claim for supervisory liability, plaintiff "must show:  1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations."  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).  Simply making the warden aware of a medical issue is insufficient to impose liability.  Moreover, a non-physician defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993.)  Knight concedes that Ebbert had no part in treating his medical needs by stating that "all save Defendant Ebbert were personally involved in diagnosing, scheduling treatments/surgeries, reviews, follow-ups, etc.  But nonetheless Defendant [e]bbert personally reviewed Knight's medical file and (wrongly) diagnosised [sic] his []treatment adequate."  (Doc. 22, at 3., ¶ 13.)  There is no question that Ebbert is a non-medical defendant and it is clear from the allegations of the complaint that Knight was receiving treatment from the institution's health care staff.  Consequently, the claim against this defendant is subject to dismissal.

**II. Motion for Summary Judgment**

A. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

B. Statement of Material Facts

On February 1, 2007, Knight reported to sick call. He was examined by a physician's assistant ("PA") who found a lesion on his scalp in the occipital area and diagnosed him with alopecia.[4] (Doc. 18-2, at 15.) On March 28, 2007, he reported to sick call with a complaint of a wart on the back of his head and was given a March 30, 2007, appointment. (Id. at 17.) During the March 30, 2007 examination, a

---

[4] "Alopecia areata is a hair-loss condition which usually affects the scalp." See http://www.medicinenet.com /alopecia_areata/article.htm.

fluctuant mass was found in the occipital area and Knight was prescribed Keflex three times a day for fourteen days. He was directed to report to sick call on April 13, 2007, for follow-up. He did not report. (Id. at 18.)

Knight returned to sick call on April 28, 2007, again complaining of a wart on the back of his head, and he was given a May 3, 2007 appointment. (Doc. 18-2, at 19.) At that time, he was evaluated by a PA who opened the mass on the back of his head. (Id. at 19.) The PA noted that there was no drainage from the mass and referred Knight to a general surgeon. (Id.)

On May 16, 2007, Knight again reported to sick call with the same complaint and was given an appointment of May 21, 2007. (Doc. 18-2, at 20.) He reported to sick call and inquired as to when he would be seen by the surgeon. He was examined by a PA and the lump was identified as a lipoma.[5] He was given Motrin for pain and referred to the surgeon. (Id. at 20.) On May 22, 2007, the Utilization review Committee approved the surgical consultation. (Doc. 18-2, at 22.)

On July 11, 2007, he reported to sick call complaining of the wart on the back of his head and of pain in his left leg. (Id. at 23.) He was given Ibuprofen. (Id.)

The surgical consult took place on October 23, 2007, and on examination, it was noted that Knight had multiple sebaceous cysts of the occipital area including a

---

[5]"A lipoma is a growth of fat cells in a thin, fibrous capsule usually found just below the skin. Lipomas are found most often on the torso, neck, upper thighs, upper arms, and armpits, but they can occur almost anywhere in the body. One or more lipomas may be present at the same time. Lipomas are the most common noncancerous soft tissue growth." See http://www.webmd.com/skin-problems-and-treatments/tc/lipoma-topic-overview

10

dormant chronically infected 3 cm sebaceous cyst that was tender and slightly erythematous.[6] (Doc. 18-2, at 24.) The surgeon recommended "urgent excision," a dermatology consultation, and antibiotics if the cyst became infected again while waiting for surgery. (Id.) The surgery and dermatology consult requests were reviewed by the utilization Review Committee and approved on October 30, 2007. (Id. at 25-26.) On January 30, 2008, Knight completed the pre-surgical questionnaire. (Doc. 18-2, at 28-29.) He was scheduled for surgery on February 1, 2008, but the transport to surgery was cancelled "due to unknown custody/security reasons beyond the control of the Health Services staff." (Doc. 18-2, Declaration of Ronald Laino, Health Services Administrator, at 5, ¶ 17).

On April 23, 2008, Knight reported to sick call complaining of a lump on the back of his head. He was examined by the PA on April 28, 2008, and it was noted that he had lipoma, which was to be surgically removed. (Doc. 18-2, at 31.) He again presented on June 13, 2008 with the complaint that he had a wart on the back of his head and was told that he was scheduled for surgery. (Id. at 33.) Because there was no infection, antibiotics were not clinically indicated. (Id.) He was advised to purchase from the commissary Ibuprofen to alleviate his pain. (Id.)

On June 18, 2008, his pre-surgery paperwork was completed and faxed to the Surgery Center. (Doc. 18-2, at 34.) On June 27, 2008, according to defendant Laino,

---

[6]Erythema is defined as redness of the skin caused by dilatation and congestion of the capillaries, often a sign of inflammation or infection. See http://www.thefreedictionary.com/Erythematous.

11

Knight was transported to the Surgery Center in Allenwood, but the appointment was cancelled because the surgery was to take place at Muncy Hospital, not the Surgery Center. (Doc. 18-2, Declaration of Ronald Laino, Health Services Administrator ("Laino Decl."), at 6, ¶ 22.)

In July, Knight was examined by defendant Miller. The exam revealed "several typical sebaceous cysts the largest is 2cm. There is acne with some inflammatory lesions noted, especially lower at the hairline." (Doc. 18-2, at 35.) Although there was palpable deformity, there was no tenderness on palpation. Defendant Miller also noted that "[n]o ongoing antibiotics indicated. The lesions look good at this time." (Id. at 36.) The visit was summarized as follows:

> The inmate is here to discuss his scalp problem and whether he needs any further antibiotics at this point. He notes that occasionally his scalp gets a little drainage from several lesions. He has seen the surgeon and excision had been recommended to him, however, he got transported to the wrong location at his last trip and his previous trip was cancelled. He really has no other complaint bu[t] we talked about general care and taking antibiotics when the sebaceous cysts do get infected.

(Doc. 18-2, at 35.) In August, he was seen by defendant Brady. It was noted that plaintiff suffered from multiple cysts that extended across the occipital area of the head and, although the cysts were chronically infected in March 2007, there was no indication of infection or drainage since that time. (Id. at 37.) Other than the antibiotics in March 2007, there has been "no other intervention for this [condition] since 2000." (Id.) Defendant Brady informed Knight that surgery would be primarily for cosmetic reasons. (Id.) Surgical intervention was therefore deferred. (Id. at 38.) Knight indicated that he would take legal action. (Id.)

12

He reported to sick call several more times in September and October 2008 complaining of pain emanating from lesions that were oozing pus on the back of his head and requesting antibiotics. (Doc. 18-2 at, pp. 39-48.) Although there were cysts present each time Knight was examined, the cysts were not red, swollen, draining or infected. (Id.) Consequently, no antibiotics were clinically indicated and he was directed to apply warm compresses and take Ibuprofen. (Id.) He has not reported to sick call with complaints of cysts since October 29, 2008. (Doc. 18-2, Laino Decl., at 8, ¶ 30.)

In January 2009, Knight filed the instant action disputing that defendants were qualified to change his treatment from surgery to nothing. (Doc. 22, at 7, ¶ 28.)

C. Discussion

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, as is alleged here, a plaintiff must establish that defendants acted "with deliberate indifference to his or her serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002). In this context, deliberate indifference has been defined as more than mere malpractice or

13

negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, when the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 109 (1990); Monmouth County Corr. Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987). A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference, and "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

To survive defendants' motions for summary judgment, Knight is required to point to some evidence to show that defendants knew of, or were aware of, a substantial risk of serious harm to him. Singletary v. Pennsylvania Dept. of
14

Corrections, 266 F.3d 186, 192 n. 2 (3d Cir. 2001)). There is no record evidence that suggests that any defendant knew that Knight faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Moreover, he has failed to demonstrate that he suffered any harm as a result of defendants' actions and his statement that defendants "changed his treatment from surgery to nothing" is inaccurate. (Doc. 22, at 7.) In fact, the record demonstrates the contrary. Knight was treated on each and every occasion that he sought medical treatment for the recurring cysts. According to the medial records, the only time the cysts were infected was in March 2007. During this time period, surgery was indicated due to chronic infection of the cysts, and the surgical procedure was scheduled. Due to circumstances beyond defendants' control, the surgery did not take place. Thereafter, Knight requested sick call numerous times, citing infection of the cysts and a need for antibiotics. Each and every time he was examined, no infection of the cysts was detected and the cysts were treated with warm compresses and Ibuprofen was recommended.[7] He routinely inquired about the surgery. While the cyst condition persisted, it was no longer accompanied by

---

[7] Had defendants refused to treat Knight *after* the surgery was scheduled, I would have a different view of his claim in the context of a Rule 56 motion. Similarly, had the infection persisted, there would be triable issues of fact for the jury on the question of deliberate indifference. In the instant case, however, Knight's condition clearly improved *by virtue of non-surgical treatment*, rendering surgical intervention unnecessary.

chronic infection.[8]  Hence, surgery was no longer medically necessary.  Knight's position that  the denial of surgery constitutes deliberate indifference fails to recognize that there has been a change in his medical  condition and that surgery is no longer medically necessary; to the contrary, surgery is indicated only for cosmetic reasons.  (Doc. 18-2 at 37.)  Consequently, defendants are entitled to summary judgment.  See Brandner v. First Correctional Medical, 167 F. App'x 328, 2006 WL 358512 (3d Cir. 2006) (holding that medical treatment consisting of MRI of knee yielding normal results did not evidence deliberate indifference); Banuelos v. McFarland, 41 F.3d 232 (5th Cir. 1995) (a disagreement between an inmate and his physician concerning whether certain medical care was appropriate is actionable under section 1983 only under exceptional circumstances); Monmouth, 834 F.2d at 346 (deliberate indifference may be shown only where prison officials have actual knowledge of the need for treatment, yet intentionally refuse to provide any appropriate care).

---

[8]Knight complained of infection of the cysts and a need for antibiotics when he put in sick call requests.  However, the medical records do not confirm his personal assessment of his condition and he comes forward with no evidence, documentary or otherwise to support his position.  The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  Knight's statements that the cysts were infected and that he was in need of antibiotics are unsupported conclusory assertions which are insufficient to overcome summary judgment.

**III. Conclusion**

Based on the foregoing, defendants' motion to dismiss the plaintiff's complaint will be granted with respect to all defendants in their official capacities and defendant Ebbert in his personal capacity and denied in all other respects. Defendants' motion for summary judgment on the claims against remaining defendants Laino, Brady, Miller, and Spotts will be granted.

An appropriate order follows.


    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:      March 23, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARL A. KNIGHT,** | : | **CIVIL ACTION NO. 1:09-CV-0060** |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **WARDEN DAVID J. EBBERT, et al.,** | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 23rd day of March, 2010, upon consideration of defendants' motion to dismiss and for summary judgment (Doc. 16), it is hereby ORDERED that:

1. The motion to dismiss is GRANTED in part and DENIED in part. It is GRANTED as to all defendants in their official capacities.

2. The motion to dismiss is also GRANTED as to defendant Ebbert.

3. The motion to dismiss is DENIED in all other respects.

4. The motion for summary judgment is GRANTED with respect to defendants Laino, Miller, Brady and Spotts.

5. The Clerk of Court is directed to ENTER judgment in favor of defendants Laino, Miller, Brady and Spotts and against plaintiff.

6. The Clerk of Court is further directed to CLOSE this case.

7. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

                                                        S/ Christopher C. Conner
                                                       CHRISTOPHER C. CONNER
                                                       United States District Judge